UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

EDWARD L. OFFORD,

        Plaintiff,

vs.                                     Case No.  3:06-cv-544-J-25MCR

MICHAEL J. ASTRUE, Commissioner of the
Social Security Administration,[1]

        Defendant.
_____/

## REPORT AND RECOMMENDATION[2]

This cause is before the Court on Plaintiff's appeal of an administrative decision

denying his application for Social Security benefits.  The Court has reviewed the record,

the briefs, and the applicable law.  For the reasons set forth herein, it is recommended

the Commissioner's decision be **AFFIRMED**.

## I.      PROCEDURAL HISTORY

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI") on April 11, 2003, alleging an inability to work

since September 17, 2002.  (Tr. 68-69, 284A-286).  The Social Security Administration

("SSA") denied the applications initially and upon reconsideration.  (Tr. 25, 27, 29, 34,

---

[1] Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart, as Commissioner of the Social Security Administration.  See Rule 25(d)(1), Fed.R.Civ.P.

[2] Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within ten (10) days after service of this document.  Failure to file timely objections shall bar the party from a de novo determination by a District Judge and from attacking factual findings on appeal.

287, 291, 295, 297).  Plaintiff then requested and received an initial hearing before an

Administrative Law Judge ("ALJ") on June 1, 2005 (Tr. 36, 49), and a supplemental

hearing on November 15, 2005 (Tr. 59).  On November 23, 2005, the ALJ issued a

decision finding Plaintiff not disabled.  (Tr. 12-24).  On December 20, 2005, Plaintiff filed

a Request for Review by the Appeals Council.  (Tr. 8).  On April 26, 2006, the Appeals

Council denied Plaintiff's Request for Review, thus making the ALJ's November 23,

2005 decision the final decision of the Commissioner.  (Tr. 5-7).  Plaintiff timely filed his

Complaint in the U.S. District Court on June 15, 2006.  (Doc. 1).

## II.     NATURE OF DISABILITY CLAIM

### A.     <u>Basis of Claimed Disability</u>

Plaintiff claims to be disabled since September 17, 2002 (Tr. 68, 76) due to a

stroke, a heart valve problem, childhood rheumatic fever (Tr. 26, 75, 288), difficulty

lifting and standing, headaches with dizziness, pain in the neck, shoulder, back, and

hand, and loss of memory and focus (Tr. 28, 296).

### B.     <u>Summary of Evidence Before the ALJ</u>

Plaintiff was forty-five (45) years of age on the date of the hearing.  (Tr. 303).  He

has a high school diploma (Tr. 80, 304) and past relevant work experience as a truck

driver, concrete worker (Tr. 76), maintenance person, laborer, machine operator, and

painter (Tr. 86).

Plaintiff's medical history is highlighted in the ALJ's decision and therefore, will

not be repeated in full here.  However, by way of summary, the record indicates Plaintiff

had cardiac surgery (mechanical valve replacement) in 1999 (Tr. 275) as a result of

problems relating back to childhood rheumatic fever (Tr. 192), but recovered remarkably and "returned to full functional status" (Tr. 149).  In July 2001, Plaintiff had anemia secondary to GI bleeding (Tr. 129, 136), and was admitted to Putnam Community Medical Center with vomiting and dizziness (Tr. 135).  In October 2002, Plaintiff had a stroke that resulted in mild weakness in his left leg, memory problems, and mild speech difficulties.  (Tr. 192).

Plaintiff has been seeing his treating physician, Dr. Abdul Bhatti, since January 2002 (Tr. 187, 189, 191) when he complained of chest pain (Tr. 187).  On January 22, 2002, a doppler study requested by Dr. Bhatti revealed Plaintiff's posterior heart wall thickness was greater than normal.  Id.  Dr. Bhatti noted there was trivial tricuspid regurgitation, mild pulmonic insufficiency, and mild mitral regurgitation.  Id.  Dr. Bhatti noted Plaintiff had expressive dysphasia and cognitive dysfunction (Tr. 176, 179-81), and continued seeing him through March 2003 (Tr. 174-76, 179-86).

On September 17, 2002, Plaintiff was hospitalized for impaired speech (aphasia). (Tr. 140, 243).  Dr. Mohammad Kaleem's September 18, 2002 consultation report shows Plaintiff was admitted with acute signs and symptoms of a stroke.  (Tr. 149).  Dr. W. Nicholson Ainsworth, IV, noted Plaintiff's speech impairment was due to a central lesion and consisted of lack of coordination and failure to arrange words in their proper order.  (Tr. 154).  Dr. Amit Das's September 17, 2002 neurological consultation showed Plaintiff could not think of the right words to express himself, could not name simple things, had right and left disorientation, but could follow simple commands.  (Tr. 156). Dr. Das's impressions included acute left hemispheric infarction with expressive dysphasia.  (Tr. 157).  Dr. Bhatti's September 17, 2002 report showed Plaintiff had no

chest pain, shortness of breath, or ankle edema (Tr. 159), his heart rhythm was regular (Tr. 160), but he had difficulty with expression (Tr. 161).

A CT scan of Plaintiff's head showed interval development of moderate size area of infarct on the left side of the brain and sinusitis. (Tr. 140, 246, 247). Plaintiff denied any pain, but complained of blurry vision in his left eye. (Tr. 152-53). Plaintiff was diagnosed with left cerebrovascular accident with transient expressive aphasia (Tr. 141, 161), mitral regurgitation with status post mitral valve replacement with St. Jude mitral prosthetis (Tr. 161), sickle trait with no episode for the last six years (Tr. 159, 161), and degenerative arthritis with history of back pain (Tr. 161). Dr. Bhatti noted Plaintiff gradually improved, his speech became normal, and on discharge he was fully ambulatory. (Tr. 140-41). He instructed Plaintiff to refrain from driving for the time. (Tr. 141). Dr. Kaleem also noted Plaintiff's symptoms had improved remarkably but he still had some residual neurological deficit. (Tr. 149). Plaintiff's September 17, 2002 assessment showed "[a]cute cerebrovascular accident with marked clinical improvement in the setting of a mechanical mitral valve." (Tr. 150).

On October 15, 2002, Dr. Ainsworth examined Plaintiff (Tr. 162) and noted he could drive with glasses (Tr. 166). Dr. Das's notes confirmed Plaintiff's vision was good with glasses. (Tr. 232, 238, 241). Dr. Das's regular examinations from September 2002 through August 2003 (Tr. 225, 227, 232, 238, 241, 243, 245, 247) showed Plaintiff's speech was a little hesitant (Tr. 232, 238, 241, 243, 247) but improving (Tr. 227-28, 232, 238, 241, 247), he was confused with two-step commands and with right and left orientation (Tr. 243, 245, 247), he had headaches (Tr. 225, 228, 232) and

4

difficulty thinking (Tr. 227-28, 232, 238), and his left eye vision was poor but improving (Tr. 238, 241, 243, 247). Dr. Das noted Plaintiff could name simple things (except on September 17, 2002 (Tr. 245)) and follow simple commands (Tr. 232, 238, 241, 243, 245, 247), his tone and strength in all four extremities were normal (Tr. 232, 238, 241, 243, 246-47), and his coordination and gait were normal (Tr. 232, 238, 241, 243, 246-47).

On October 9, 2002, Dr. Das noted Plaintiff was "advised to stay off work at this time" until his next appointment (Tr. 244, 248) and to start speech therapy (Tr. 244). On November 6, 2002, Dr. Das confirmed Plaintiff could not yet return to his job (Tr. 241) and should continue with speech therapy, but noted that if Plaintiff "[could] do well with . . . [driving small cars], we might release him to go back to his previous work" (Tr. 242). The Speech Therapy Progress Note from November 2002 indicated Plaintiff's "[w]ord finding skills [had] improved" and he was able to talk on the phone and converse with family and friends. (Tr. 240). On December 30, 2002, Dr. Das reported that Plaintiff had a significant neuropsychological and cognitive impairment, was advised not to drive at that time (Tr. 239) as he had "difficulty in driving as smoothly as before the stroke," "could not return to his job yet" (Tr. 238), but he "might be able to work for physical and manual labor jobs which [did] not involve much cognitive function of the brain" (Tr. 239).

On January 28, 2003, Dr. Das again noted that Plaintiff could not work at that time (Tr. 234, 235, 237), he needed to be absent from work for treatment (Tr. 235), but Dr. Das could not specify the duration of Plaintiff's incapacitation (Tr. 234). On March 4, 2003, Dr. Das continued asserting Plaintiff could not go back to his job yet due to problems with speech, vision, and cognition. (Tr. 232). Dr. Das's March 14, 2003 notes

5

showed Plaintiff "was advised that he [could not] work at his previous job but he [could]

go back to work if there is an alternative job which [did] not involve driving a dump truck"

(Tr. 229) due to problems with speech, vision, and cognition (Tr. 228).  On April 9, 2003,

Dr. Das noted Plaintiff's condition remained basically unchanged and he could not work

at that time, but he would "try to get an alternative job."  (Tr. 227).  On August 29, 2003,

Dr. Das reaffirmed Plaintiff could not work at that time due to his speech and cognitive

difficulties, that his condition remained basically unchanged but his speech had

improved.  (Tr. 225).  Dr. Das also noted Plaintiff was referred for cognitive and speech

therapy, but he did not show up because he had lost his insurance.  Id.

In 2003, Plaintiff was also examined by other professionals.  In March 2003,

Michael J. Meehan, LCSW, stated Plaintiff's mood was depressed, his anxiety level high

(Tr. 167-68, 173), his concentration impaired (Tr. 171), his GAF[3] was 60 (Tr. 170), and

he exhibited low self-esteem, hopelessness, social withdrawal, guilt, and excessive

anger (Tr. 171).  Mr. Meehan noted Plaintiff was unable to work due to medical

problems (Tr. 172), was prescribed therapy (Tr. 173), but had no problems caring for

himself (Tr. 172).

In May 2003, Dr. Donald W. Morford completed a physical Residual Functional

Capacity ("RFC") assessment on Plaintiff that revealed he was able to: lift and/or carry

---

[3] The Global Assessment of Functioning ("GAF") Scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without including any impaired functioning due to physical or environmental limitations.  Diagnostic and Statistical Manual of Mental Disorders (DSM-IV ) at 32 (4th ed. 1994).  A GAF score of 51-60 indicates moderate symptoms, or moderate difficulty in social or occupational functioning (e.g., few friends, conflicts with peers or co-workers).  Id. at 32.  A GAF score of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), OR serious impairment in social or occupational functioning (e.g., no friends, unable to keep a job).  Id.

twenty pounds occasionally and ten pounds frequently; stand and/or walk for six hours and sit for six hours in an eight-hour workday (Tr. 195); and climb, balance, stoop, kneel, crouch, or crawl occasionally (Tr. 196).  It also demonstrated Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, vibration, and hazards. (Tr. 198).  Dr. Morford noted Plaintiff's speech was a little hesitant (Tr. 195); his vision was good with glasses (Tr. 196); his motor strength was good (Tr. 199); and he had no manipulative, visual (Tr. 197), communicative (Tr. 198), or push/pull limitations (Tr. 195).

In June 2003, Dr. Robert A. Greenberg's report showed Plaintiff "was able to hear and understand normal, conversational speech, and the quality of his speech was easily understood."  (Tr. 193).  Dr. Greenberg noted Plaintiff's mental exam appeared normal and his "repetitive muscle testing did not reproduce fatigue."  Id.  Dr. Greenberg concluded Plaintiff "should be able to perform most work-related activities, however, his mental problems [would] probably prevent him from truck driving."  Id.

In June 2003, Plaintiff was also examined by Louis Legum, Ph.D., who diagnosed him with dementia secondary to infarct, mild to moderate expressive aphasic disorder, depressive disorder, and GAF of 50-55.  (Tr. 206).  Dr. Legum noted Plaintiff's "aphasia [had] substantially been resolved, albeit, not completely so" (Tr. 206) as his speech was well articulated but he "showed some delay in responding to questions" (Tr. 205).  Dr. Legum further reported that Plaintiff was not "in any obvious physical or emotional distress," and was vague on whether he could work at a less demanding job (Tr. 206).  Plaintiff correctly supplied personal information, could respond to simple instructions, but had difficulty with common sense reasoning.  (Tr. 205).  Dr. Legum

7

stated Plaintiff's memory and attentional ability were likely compromised, his affect was slightly blunted, but his thought process was good.  Id.  Dr. Legum concluded Plaintiff was "marginally competent" to manage his finances.  (Tr. 206).

In July 2003, Patricia A. Boger, Ph.D., completed a Psychiatric Review Technique and a mental RFC assessment on Plaintiff.  (Tr. 207, 221).  The Psychiatric Review Technique revealed mild restrictions in activities of daily living and in maintaining social functioning; moderate restrictions in maintaining concentration, persistence, or pace; and one or two episodes of decompensation, each of extended duration.  (Tr. 217).  Dr. Boger noted Plaintiff's aphasia appeared mostly resolved as he supplied all personal information (Tr. 219), but he had some memory impairment (Tr. 208).  Dr. Boger's mental RFC assessment demonstrated Plaintiff was moderately limited in the ability to: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods of time (Tr. 221); interact appropriately with the general public; and travel in unfamiliar places or use public transportation (Tr. 222).  Plaintiff had decreased memory for new information, but his activities of daily living were well-preserved, including the ability to drive short distances, and his social, adaptive skills seemed intact.  (Tr. 223).  Dr. Boger concluded Plaintiff appeared capable of performing routine tasks.  Id.

In October 2003, Dr. Mark A. Williams completed a Psychiatric Review Technique and a mental RFC assessment on Plaintiff.  (Tr. 249, 263).  The Psychiatric Review Technique revealed moderate limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace, and one or two episodes of decompensation, each of extended duration.  (Tr. 259).  Dr. Williams noted

Plaintiff's cognitive skills were impaired (Tr. 261), but he could follow simple instructions, drive independently, and return to simple work except truck driving (Tr. 262). Dr. Williams's mental RFC assessment showed Plaintiff was moderately limited in the ability to: understand, remember, and carry out detailed instructions (Tr. 263); interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others (Tr. 264). Dr. Williams stated Plaintiff was able to reliably understand and recall simple, but not detailed, instructions, to carry out simple tasks adequate to complete an eight-hour workday, and to work with the public and coworkers in a casual setting. (Tr. 265). Dr. Williams added Plaintiff's work demands should be mostly routine, and his driving should be brief, in familiar settings, and not part of his job demands. Id.

In November 2003, Dr. Daria F. Marranzini stated Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours and sit for six hours in an eight-hour workday (Tr. 268), and occasionally climb, balance, stoop, kneel, crouch, or crawl (Tr. 269). Dr. Marranzini added Plaintiff should avoid: concentrated exposure to extreme cold, extreme heat, noise and vibration; and all exposure to hazards. (Tr. 271). She also noted cognitive (Tr. 270) and communicative limitations in speaking (Tr. 271).

Finally, Sherry V. Risch, Ph.D., conducted a psychological evaluation of Plaintiff on August 18, 2005. (Tr. 275). Dr. Risch's test results showed Plaintiff had marked restrictions in the ability to understand, remember, and carry out detailed instructions; moderate restrictions in the ability to make judgments on simple work-related decisions

(Tr. 282) and to respond appropriately to work pressures in an usual work setting; slight restrictions in the ability to respond appropriately to changes in a routine work setting (Tr. 283); mild memory problems; a weakness in encoding verbal information; and reading deficits (Tr. 282).  Dr. Risch also noted Plaintiff's speech and pronunciation were good despite his occasional mild difficulties with expressive skills, he could describe current and past events (Tr. 277), he had no thought disorder (Tr. 278), he was capable of managing his own finances (Tr. 279), but he had problems with mental control (Tr. 277), and his GAF was 65[4] (Tr. 279).

Dr. Risch diagnosed Plaintiff with a reading disorder, a cognitive disorder, and a recurrent major depressive disorder, post left parietal infarction with expressive dysphasia, chronic headaches, and memory deficits.  Id.  Nevertheless, she noted Plaintiff did not appear to be putting forth his best effort during the exam.  (Tr. 278). Thus, although his psychological testing placed him at the mild mental retardation class, based on the interview information and Plaintiff's overall functional abilities, Dr. Risch concluded Plaintiff was not retarded (Tr. 280) because his test results were depressed (Tr. 278, 281).  Dr. Risch stated Plaintiff had "some cognitive deficits, but the absolute measure of his difficulty [was] unknown." (Tr. 281).  She further stated Plaintiff appeared able to maintain his activities of daily living, to interact with coworkers, supervisors, and the public, to maintain persistence and pace (but not continually due to chronic headaches), and to manage his finances.  Id.  Dr. Risch noted Plaintiff would

---

[4] A GAF score of 65 indicates some mild symptoms OR some difficulty in social, occupational, or school functioning, but in general, good functioning and some meaningful interpersonal relationships.  Diagnostic and Statistical Manual of Mental Disorders (DSM-IV ) at 32 (4th ed. 1994).

potentially have difficulties with reliability and predictability due to his episodic depressed mood and memory complaints, and he "would have difficulty learning even the most basic of job rules and following the most simple of directives." Id.

During the ALJ hearings, Plaintiff testified he could not work as a truck driver because he became sleepy and his driving was not as good as it had been.  (Tr. 305). He testified he took medication to stay awake (Tr. 330), needed to take a break every sixty to ninety minutes, had memory problems and depression (Tr. 334), and could not understand some words (Tr. 321).  He stated he had headaches twice a week (Tr. 319) caused by the sun (Tr. 322), lasting for up to forty-five minutes that were relieved by a nap (Tr. 320).  In regards to his daily activities, Plaintiff testified he cleaned, did the laundry, babysat his two younger children, went to the park (Tr. 309), cooked simple meals, washed the dishes, made the bed, took the trash out (Tr. 310), read the newspaper, watched television, listened to music, solved puzzles (Tr. 311), went grocery shopping with his mother, attended church (Tr. 312), visited friends and family (Tr. 313), drove his mother to and from work five days a week (Tr. 313-14), and took care of his personal hygiene (Tr.315).

## C.    Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in a substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve (12) months.  42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  The ALJ must follow five steps in evaluating a claim of disability.  20 C.F.R. §§ 404.1520(a), 416.920(a).  First, if a claimant is working

at a substantial gainful activity, he is not disabled.  20 C.F.R. §§ 404.1520(b),

416.920(a)(4)(i).  Second, if a claimant does not have any impairment or a combination

of impairments which significantly limit his physical or mental ability to do basic work

activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. §§

404.1520(c), 416.920(a)(4)(ii).

Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R.

Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. §§ 404.1520(d),

416.920(a)(4)(iii).  Fourth, if a claimant's impairments do not prevent him from doing

past relevant work, he is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(a)(4)(iv).

Fifth, if a claimant's impairments (considering his RFC, age, education, and past work)

prevent him from doing other work that exists in the national economy, then he is

disabled.  20 C.F.R. §§ 404.1520(g), 416.920(a)(4)(v).  Plaintiff bears the burden of

persuasion through step four, while at step five, the burden shifts to the Commissioner.

Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the nondisability

requirements of the Social Security Act and was insured for benefits up through the date

of the ALJ's decision.  (Tr. 16, 23).  At step one, the ALJ found Plaintiff had "not

engaged in substantial gainful activity since his alleged onset date."  Id.  At step two, the

ALJ found Plaintiff had "the following severe impairments: history of CVA with mild

expressive aphasia; history of rheumatic heart disease and mitral valve replacement;

history [of] left side headaches; degenerative arthritis of the lumbar spine; affective

disorder; and organic mental disorder."  (Tr. 18, 23).  At step three, the ALJ stated "the

medical evidence [indicated] that the claimant [had] impairments that [were] 'severe'

within the meaning of the Regulations but not 'severe' enough to meet or medically

equal, either singly or in combination, one of the impairments listed in Appendix 1,

Subpart P, Regulations No. 4." Id.

  In regards to Plaintiff's RFC, the ALJ found Plaintiff could lift 10 pounds and

could "occasionally bend, stoop, kneel, crouch or crawl but he should avoid climbing any

ladders or unprotected heights." (Tr. 19, 23). Plaintiff "should also avoid operating any

heavy moving machinery and he should avoid extreme heat conditions because of

headaches." Id. Plaintiff was "limited to simple tasks and should avoid jobs that create

unusual amounts of stress." Id. The ALJ determined Plaintiff's testimony regarding his

limitations was "not totally credible" (Tr. 23), because there was "simply no credible

objective evidence during the relevant period that could reasonably produce all of the

symptoms the claimant [alleged] and engage in the activities of daily living" and

because of the internal inconsistencies in Plaintiff's reports (Tr. 21).

  At step four, the ALJ utilized the testimony of a vocational expert ("VE") and

found Plaintiff "was unable to perform past relevant work." (Tr. 22, 23). Accordingly,

the ALJ proceeded to step five where, utilizing the VE's testimony again, he determined

that based on Plaintiff's "age, educational background, work experience, and residual

functional capacity," Plaintiff was "capable of making a successful adjustment to work

that [existed] in significant numbers in the national economy." (Tr. 22). Some of these

jobs included a hand packager, a surveillance system monitor, a ticket seller and a

parking lot attendant. (Tr. 24). Therefore, the ALJ found Plaintiff was not disabled

within the meaning of the Social Security Act. (Tr. 22, 24).

III.    **ANALYSIS**

    A.    <u>**The Standard of Review**</u>

       The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards,  <u>McRoberts v. Bowen</u>, 841 F.2d 1077, 1080 (11th Cir. 1988),  and whether the findings are supported by substantial evidence, <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson</u>, 402 U.S. at 401).

       Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as a finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991); <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  <u>Foote</u>, 67 F.3d at 1560; <u>accord</u> <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (explaining the court must scrutinize the entire record to determine the reasonableness of the factual findings).

**B.** **Issues on Appeal**

Plaintiff argues two issues on appeal.  (Doc. 12).  First, he asserts the ALJ erred

by failing to give appropriate weight to the opinions of Plaintiff's treating physicians.

(Doc. 12, p.14).  Second, Plaintiff argues the hypothetical question submitted to the VE

is not supported by substantial evidence because it failed to take into account Plaintiff's

treating physicians' opinions regarding his speech and cognitive difficulties.  (Doc. 12,

p.15).  As a result, Plaintiff claims the ALJ erred by using the VE's answers to the

hypothetical question in ruling on Plaintiff's disability.  Id.  The Court will discuss each

issue in turn.

### 1. Whether the ALJ gave appropriate weight to the medical opinions of record and specifically to the opinions of Plaintiff's treating physicians.

Plaintiff asserts the ALJ erred by not giving appropriate weight to the opinions of

Plaintiff's treating physicians.  (Doc. 12, p.14).  The Commissioner responds the ALJ

considered all of the opinions of record and assigned appropriate weight.  (Doc. 16,

p.7).  The Court has reviewed the record, the briefs, and the applicable law, and finds

the ALJ considered and gave appropriate weight to the evidence of record, including the

opinions of Dr. Das and Dr. Bhatti.

The ALJ is required to consider all of the evidence in the claimant's record when

making a disability determination.  20 C.F.R. §§ 404.1520(a), 416.920(a).  In addition,

the ALJ must state the weight afforded to the evidence considered.  Ryan v. Heckler,

762 F.2d 939, 941 (11th Cir. 1985).  Specifically, the ALJ "should state the weight he

accords to each item of impairment evidence and the reasons for his decision to accept

15

or reject that evidence." Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990).

Although the ALJ is required to consider all of the evidence, he is not required to

discuss all of the evidence presented, but rather "must explain why 'significant probative

evidence has been rejected.'" Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir.

1984).

In the present case, the ALJ properly considered all of the evidence in the record,

including Dr. Das's and Dr. Bhatti's opinions. (Tr. 17-22). The ALJ stated he gave

some, but not controlling, weight to Dr. Das's opinion that Plaintiff was unable to work

because it conflicted with other credible evidence in the record and with Plaintiff's own

activities. (Tr. 20). Although the ALJ should generally give more weight to a treating

physician's opinion than to a consulting physician's opinion, Wilson v. Heckler, 734

F.2d 513, 518 (11th Cir. 1984); Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir.

1986); Sabo v. Chater, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996), the ALJ "may

choose to reject the opinion of a treating physician while accepting the opinion of a

consulting physician" when the ALJ can demonstrate "good cause" for his or her

decision, Gholston v. Barnhart, 347 F. Supp. 2d 1108, 1114 (M.D. Ala. 2003). See also

Wilson, 734 F.2d at 518 (stating "the ALJ may reject a treating doctor's opinion when it

is contrary to the evidence . . . and [a]n acceptable medical opinion as to disability must

contain more than a mere conclusory statement that the claimant is disabled," rather,

"[i]t must be supported by clinical or laboratory findings").

In the instant case, the ALJ showed good cause for rejecting Dr. Das's opinion

that Plaintiff could not work, namely, its inconsistency with other credible evidence in the

record and with Plaintiff's own activities. (Tr. 20). Dr. Das's statement that Plaintiff

16

could not work signifies only a temporary restriction, is conclusory, and is inconsistent with Dr. Das's own treatment records, with other evidence in the record, and with Plaintiff's activities.  Between October 9, 2002 and August 29, 2003, Dr. Das made several statements indicating Plaintiff should "stay off work at this time" until his next appointment and that Plaintiff "could not return to his job yet".  (Tr. 234-35, 237-38, 241, 244, 248).  All of these statements showed only a temporary restriction from work in general, and some of them even indicated that Plaintiff could seek alternative employment.  For instance, on December 30, 2002, Dr. Das noted Plaintiff "might be able to work for physical and manual labor jobs which [did] not involve much cognitive function of the brain."  (Tr. 239).  On March 14, 2003, Dr. Das stated Plaintiff could "go back to work if there [was] an alternative job which [did] not involve driving a dump truck."  (Tr. 229).  On April 9, 2003, Dr. Das opined Plaintiff could "try to get an alternative job apart from driving dump trunks [sic]."  (Tr. 227).  Moreover, on November 6, 2002, Dr. Das indicated that Plaintiff might even be released to his previous work if he could do well with driving cars.  (Tr. 242).

In addition, the Commissioner correctly points out that Dr. Das's statements regarding Plaintiff's inability to work are not medical opinions; rather, they are statements that are conclusory and concern issues reserved to the Commissioner.  See 20 C.F.R. §§ 404.1527(e), 416.927(e) (specifying which opinions are reserved to the Commissioner).  Accordingly, the ALJ properly refused to give them controlling weight. When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment

17

relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues in question; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d), 416.927(d). Although the ALJ did not specifically weigh Dr. Das's opinion on the basis of these factors, it was not necessary to do so because the ALJ did not completely reject Dr. Das's opinion; rather, the ALJ only rejected the statements that were inconsistent with Dr. Das's own assessment, with the record as a whole, and with Plaintiff's activities. (Tr. 19-20).

Dr. Das's statements regarding Plaintiff's inability to work are inconsistent with the record as a whole and with Dr. Das's treatment records in particular. Dr. Das's treatment records demonstrated Plaintiff's vision was good when he was wearing glasses (Tr. 232, 238, 241); his speech (Tr. 225, 227-28, 232, 238, 241, 247) and word finding skills had improved (Tr. 240); he could name simple things and follow simple commands (Tr. 232, 238, 241, 243, 245, 247); and his motor system, gait, and coordination were normal (Tr. 232, 238, 241, 243, 246-47).

In addition, Dr. Das's statements that Plaintiff could not work are inconsistent with the opinions of Dr. Bhatti, Dr. Kaleem, Dr. Ainsworth, Dr. Morford, Dr. Greenberg, Dr. Legum, Dr. Boger, Dr. Williams, and Dr. Risch. Dr. Bhatti's records showed Plaintiff had gradually improved and his speech became normal. (Tr. 140-41). Dr. Kaleem stated Plaintiff's symptoms had improved remarkably. (Tr. 149). Dr. Ainsworth noted Plaintiff could drive as long as he was wearing glasses. (Tr. 166). Dr. Morford noted Plaintiff's speech was a little hesitant (Tr. 195), but indicated he had no communicative limitations (Tr. 198). Dr. Greenberg concluded that while Plaintiff might not be able to

18

drive a truck, he "should be able to perform most work-related activities." (Tr. 193). Dr. Legum stated Plaintiff's "aphasia [had] substantially been resolved," and despite his "delay in responding to questions," Plaintiff was not in physical or mental distress. (Tr. 206). Dr. Boger's records revealed that despite Plaintiff's mild and moderate limitations, his activities of daily living and adaptive skills were well-preserved. (Tr. 217, 221-23). Dr. Williams noted Plaintiff had moderate limitations (Tr. 259, 263) and his cognitive skills were impaired (Tr. 261), but he could still return to simple work not involving truck driving (Tr. 262, 265). Dr. Risch stated Plaintiff had some marked, moderate, and mild restrictions (Tr. 282-83), but his test results were depressed (Tr. 278, 281) because he did not seem to be putting forth his best effort (Tr. 278) and his interview, together with his overall functional abilities, demonstrated Plaintiff was not retarded (Tr. 280).

Finally, Dr. Das's statements that Plaintiff could not work are inconsistent with Plaintiff's activities of daily living. Plaintiff testified he cleaned, did the laundry, babysat his two younger children, went to the park (Tr. 309), cooked simple meals, washed the dishes, made the bed, took the trash out (Tr. 310), read the newspaper, solved puzzles (Tr. 311), went grocery shopping with his mother (Tr. 312), and drove her to and from work five days a week (Tr. 313-14). These activities are inconsistent with a claim of total disability.

Although Plaintiff argues the ALJ erred by not giving appropriate weight to Plaintiff's treating physicians' opinions, his argument seems to focus on the weight given to Dr. Das's statements rather than to the opinions of both Dr. Das and Dr. Bhatti. (Doc. 12, p.14). Although the ALJ did not specifically state what weight was given to Dr. Bhatti's opinion, the ALJ mentioned it throughout his decision (Tr. 17, 19), and

19

specifically when discussing how Dr. Das's conclusory statements were inconsistent

with other credible evidence in the record, including the opinion of Dr. Bhatti (Tr. 19).

By using Dr. Bhatti's opinion in discrediting Dr. Das's conclusory statements, the ALJ

implicitly gave more weight to Dr. Bhatti's opinion than to Dr. Das's statements.  (Tr. 19-

20).  Accordingly, the ALJ gave appropriate weight to Dr. Bhatti's opinion even without

expressly stating the weight given.

     In sum, the ALJ considered and gave appropriate weight to the evidence of

record, including the opinions of Dr. Das and Dr. Bhatti.

### 2.  Whether the ALJ's hypothetical question presented to the VE was supported by substantial evidence.

     Plaintiff argues the hypothetical question the ALJ presented to the VE was not

supported by substantial evidence and thus, should not have been used in the ALJ's

disability determination because it failed to take into account the opinions of Plaintiff's

treating physicians regarding Plaintiff's speech and cognitive difficulties.  (Doc. 12,

p.15).  The Commissioner responds the ALJ did not err by failing to include Dr. Das's

assessments in the hypothetical question because they were not supported by

substantial evidence.  (Doc. 16, p.18).  The Court has considered the record, the briefs,

and the applicable law, and finds the ALJ did not err by failing to include the opinions of

Dr. Bhatti and Dr. Das in the hypothetical question.

     A VE's testimony constitutes substantial evidence when the ALJ poses a

hypothetical question consisting of all of a claimant's impairments.  Wilson v. Barnhart,

284 F.3d 1219, 1227 (11th Cir. 2002) (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th

Cir. 1999)).  When the hypothetical question does not include all of a claimant's

20

limitations, the ALJ's decision which is significantly based on the expert testimony is not supported by substantial evidence. Pendley v. Heckler, 767 F.2d 1561, 1562 (11th Cir. 1985). In this Circuit, a hypothetical question was deemed incomplete when it failed to mention Plaintiff's "headaches, medication history, significant memory or concentration problems, fatigue, wrist pain, and dizziness." Vega v. Massanari, 265 F.3d 1214, 1220 (11th Cir. 2001). However, the Eleventh Circuit found a hypothetical question was not considered incomplete when it failed to include restrictions imposed due to epilepsy and depression because Plaintiff testified his epilepsy was well-controlled with medication and his depression was episodic. McSwain v. Bowen, 814 F.2d 617, 620 n.1 (11th Cir. 1987).

In the present case, the ALJ did not err by failing to include the opinions of Dr. Das and Dr. Bhatti regarding Plaintiff's speech and cognitive difficulties in the hypothetical question. First, Dr. Bhatti's reports showed Plaintiff had expressive dysphasia and cognitive dysfunction (Tr. 176, 179-81), but he gradually improved and his speech became normal (Tr. 140-41). Because Dr. Bhatti's reports revealed improvement in Plaintiff's speech, the ALJ's hypothetical question was not incomplete by failing to include Dr. Bhatti's opinion. Second, Dr. Das's reports indicated Plaintiff's speech was a little hesitant (Tr. 232, 238, 241, 243, 247) but slowly improving (Tr. 225, 227-28, 232, 238, 241, 247), that Plaintiff could follow simple commands (Tr. 232, 238, 241, 243, 245, 247), that he was attending speech therapy (Tr. 242), that his "[w]ord finding skills [had] improved," and he was able to talk on the phone and converse with family and friends (Tr. 240). At the same time, Dr. Das noted Plaintiff had difficulty with thinking (Tr. 227-28, 232, 238), cognition, and speech (Tr. 225, 228, 232), that he

21

size

should avoid jobs involving cognitive abilities (Tr. 239), and that his condition remained basically unchanged (Tr. 225).  Thus, Dr. Das's reports were internally inconsistent and the ALJ did not err by failing to include Dr. Das's opinion in the hypothetical question.

In sum, the hypothetical question the ALJ submitted to the VA was not incomplete even though it did not include the opinions of Dr. Bhatti and Dr. Das, because Dr. Bhatti's opinion reflected Plaintiff's improvement and Dr. Das's opinion was internally inconsistent.

## IV.    CONCLUSION

For the foregoing reasons, the undersigned finds the ALJ's decision is supported by substantial evidence and is based upon the proper legal standards.  Accordingly, it is hereby

**RECOMMENDED**:

The Commissioner's decision be **AFFIRMED**.

**DONE AND ENTERED** at Jacksonville, Florida, this  7th  day of August, 2007.

*Monte C. Richardson*

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Honorable Henry Lee Adams, Jr.,
        United States District Judge

22